HARRIET PARKS DUPORT (ANDERSON) and GRACE MARGARET PARKS, Appellants, v. FIRST NATIONAL BANK OF GLENS FALLS, N. Y., and THE EMERSON NATIONAL BANK OF WARRENSBURG, as Substituted Trustee under the Will of GEORGE H. PARKS, Deceased, for the HARRIET PARKS DUPORT and GRACE MARGARET PARKS Trust Funds, Respondents.

Third Department, November 1, 1939.

*Schwarte, Slade, Harrington & Goldsmith* [*John A. Slade* of counsel], for the appellants.

*Frederick G. Bascom* [*James McPhillips, C. E. Fitzgerald* and *Alexander P. Robertson* with him on the brief], for the respondent First National Bank of Glens Falls.

*Harry Reoux*, for the respondent Emerson National Bank, etc.

HILL, P. J. Through the effect of earlier decisions, it is *res judicata* that on May 4, 1923, the trustee, Mrs. Parks, was indebted to defendant First National Bank of Glens Falls in the sum of about $81,000 for which the bank held as collateral security 1,384 shares of the capital stock of the Glens Falls Portland Cement Company, ten shares of the preferred stock of the Wade & Butcher Corporation (the foregoing items belonging to her), $33,000 par value Baltimore & Ohio bonds and $11,000 par value Bowker Building bonds. The last two items she had stolen from the trust funds of which plaintiffs were and are beneficiaries.

This court, by an earlier decision involving the same trust fund and some of the same parties (*First Nat. Bank of Glens Falls* v. *Parks*, 245 App. Div. 776), determined " If the indebtedness of the widow Parks [the faithless trustee] to the plaintiff [defendant Glens Falls Bank herein] exceeds the total of all the securities, the marshalling of the assets by the plaintiff in satisfying its debt would

be an empty formality. However, if the value of all of the securities, those belonging to the widow Parks and those which she purloined and pledged exceeds the amount of her debt to the plaintiff, then as between this plaintiff and trust estate, the individual property of the widow Parks should first be exhausted before recourse is had to that which she converted from the trust estate."

It has been found herein by the trial court " That * * * some time during the year 1930, the defendant First National Bank of Glens Falls, N. Y. had notice that the said Baltimore & Ohio bonds, and said Bowker Building bonds held by it as collateral security for the payment of the said indebtedness of Grace W. Parks were claimed to be the property of the said trust estate created by the said will of George H. Parks." Upon learning this fact, the relation between the bank and the trust became one of suretyship. (*LeMarchant* v. *Moore*, 150 N. Y. 209; *Smith* v. *Savin*, 141 id. 315; *Burnap* v. *National Bank of Potsdam*, 96 id. 125; *Rutherford National Bank* v. *Manniello*, 240 App. Div. 506; affd., 266 N. Y. 568.) The bank holding this collateral of mixed ownership was obligated, under that doctrine, to apply first the securities owned by the debtor, Mrs. Parks. These it was required to sell within a reasonable time, and, after applying the proceeds to the reduction of her indebtedness, if there remained an unpaid balance for which the trust securities were liable, then it was required to sell, within a reasonable time, a sufficient amount thereof to pay this balance, returning any remaining securities to the trustee. (*Smith* v. *Savin, supra.*) Any change in the principal obligation made without the knowledge or consent of the involuntary pledgor would amount to a release. (*National Park Bank* v. *Koehler*, 204 N. Y. 174.)

We do not attempt to resolve the issue as to a reasonable time within which these sales should have been made, nor to determine whether there is liability on behalf of the Glens Falls Bank, in view of the foreclosure action, or the successor trustee bank for failure to raise these issues in the foreclosure action, but we believe that the issues in this case have not been litigated.

The judgment should be reversed on the law and facts, with costs.

BLISS, SCHENCK and FOSTER, JJ., concur; CRAPSER, J., dissents and votes to affirm.

Judgment reversed on the law and facts, with costs, and a new trial granted.

The court reverses the following findings of fact: Nos. 7, 10, 12, 16, 18, 20, 21, 22, 23 and all statements of fact contained in the conclusions of law.